IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GRETA WYNN, individually, | * | |
| and on behalf of a class of all persons | * | |
| similarly situated, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 1:09-CV-0165 |
| | * | Complaint – Class Action |
| WELLS FARGO BANK, | * | |
| N.A. and MORRIS | * | |
| HARDWICK SCHNEIDER, LLC, | * | |
| | * | |
| Defendants. | * | |

## FIRST AMENDED COMPLAINT – CLASS ACTION

Plaintiff, Greta Wynn, files this Complaint on behalf of herself and on behalf of a class of all persons similarly situated against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Morris Hardwick Schneider, LLC ("Morris Hardwick"), and shows the Court the following:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, Greta Wynn, resides in Temple, Georgia.  Her home, which served as collateral for an Interest Rate Reduction Refinancing Loan ("IRRRL") guaranteed by the United States Department of Veterans Affairs ("VA"), is located at 130 Yellow Pine Dr., Temple, GA 30179.

2.      Wells Fargo is a corporation whose principal place of business is located at 464 California Street, San Francisco, California 94104.  Wells Fargo may properly be served with a summons and a copy of this Complaint by delivery of the papers to its registered agent for service of process, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

3.      Morris Hardwick is a limited liability company whose principal place of business is located at 7000 Central Parkway, Suite 300, Atlanta, Georgia 30328. Morris Hardwick may properly be served with a summons and a copy of this Complaint by delivery of the papers to its registered agent for service of process, James C. Wheeler, One Atlantic Center, Fourteenth Floor, 1201 West Peachtree Street, NW, Atlanta, Georgia 30309-3488.

4.      The Court has jurisdiction over the subject of this case under 28 U.S.C. § 1331 and under 18 U.S.C. § 1964 because this case asserts civil claims and rights under the federal Racketeering Influenced Corrupt Organizations Act (RICO), codified at 18 U.S.C. § 1961 *et seq*.

5.      The Court has jurisdiction over Plaintiff and over Defendants because Plaintiff resides in this district and because Defendants transact sufficient business in this district to be subject to the jurisdiction of this Court and because Defendants

reside in this district.  Plaintiff refinanced her home mortgage through a VA
IRRRL and closed the loan at a location within this district.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because
a substantial part of the events or omissions giving rise to the claim occurred in this
district.  Venue is also proper in this district under 18 U.S.C. § 1965(a) because
Defendants reside, are found, have an agent, or transact their affairs in this district.

## II.     OPERATIVE FACTS

7.     Wells Fargo and Morris Hardwick, together and independently, have
engaged in a systematic scheme to charge United States military veteran-borrowers
certain fees and charges in connection with VA IRRRLs that federal law requires
the lender to pay.

8.     The charges occur when a United States military veteran refinances
his or her home mortgage by obtaining a loan guaranteed by the VA ("VA loan").

9.     Specifically, Wells Fargo, through its closing attorneys, Morris
Hardwick and other similar entities, systematically charges certain fees, such as
attorney fees, to United States military veteran-borrowers, which fees by federal
regulation are required to be paid by the lender, Wells Fargo.

10.    Likewise, Morris Hardwick, on behalf of Wells Fargo and other
lenders, systematically facilitates the charging of certain fees, such as attorney

fees, to United States military veteran-borrowers, which fees by federal regulation are required to be paid by the lender.

11.     These fees are charged to the borrower because Wells Fargo and Morris Hardwick intentionally and knowingly fail to properly disclose the fees on the HUD-1 form in connection with VA IRRRLs and instead move the fees to the wrong lines of the HUD-1 form.

12.     For instance, closing attorney fees cannot lawfully be charged to the borrower in connection with a VA IRRRL, except in certain circumstances that are not applicable here.[1]

13.     Closing attorney fees are required to be listed on line 1101 or 1107 of the HUD-1 form.

14.     If a fee is disclosed on line 1101 or 1107 of a HUD-1 form, it is an attorney fee, and if it is incurred in connection with a VA IRRRL, that charge must be borne by the lender.

---

[1] More specifically, the law allows certain charges to be allocated to the United States military veteran-borrower but only to the extent the total of such charges does not exceed 1% of the loan amount (the "1% cap"). In order to allocate closing attorney fees to the veteran-borrower at all, such fees must be included within the line items of the HUD-1 form that are subject to the "1% cap." That is inapplicable here, as no attorney fees are included within the fees that are subject to the "1% cap" and such cap has already been exhausted with other charges.

15.    Other types of fees, such as fees for title search and title examination, can lawfully be charged to the borrower in connection with a VA IRRRL.

16.    Title search and title examination fees are required to be listed on lines 1102 and 1103 of the HUD-1 form, respectively.

17.    If a fee is disclosed on line 1102 or 1103 of a HUD-1 form, it is supposed to be a title search or title examination fee, and even if it is incurred in connection with a VA IRRRL, that fee (if, in fact, for title search or title examination) may lawfully be charged to the borrower.

18.    Wells Fargo and Morris Hardwick disclose closing attorney fee charges on line 1101 or 1107 in connection with (a) VA purchase money loans, (b) conventional refinance loans, and (c) conventional purchase money loans.  In comparison, Wells Fargo and Morris Hardwick do not disclose those same charges on line 1101 or 1107 in connection with VA IRRRLs.

19.    Wells Fargo and Morris Hardwick intentionally and knowingly conceal attorney fee charges in connection with VA IRRRLs by fraudulently bundling them into title search and title examination charges so that the charges can be included in the borrower's column, so that the charges are borne by the borrower and not by the lender.

20.    The VA will not approve, and therefore will not guarantee, a VA IRRRL if it contains a charge (for closing attorney fees) listed on line 1101 or 1107 of the HUD-1 form if that charge is listed[2] in the borrower's column (meaning the borrower pays the charge).

21.    Thus, Defendants disclose some or all of the fees paid to the closing attorney on line 1101 or 1107 of the HUD-1 form in connection with VA purchase money loans, conventional refinance loans, and conventional purchase money loans, yet Defendants engage in a systematic course of conduct to never, or nearly never, disclose the same payments made to the closing attorney on line 1101 or 1107 of the HUD-1 form in connection with a VA IRRRL because such a charge in connection with a VA IRRRL must legally be borne by the lender.  Instead, in connection with a VA IRRRL, fees paid to the closing attorney that would be disclosed on line 1101 or 1107 of the HUD-1 form with any other type loan are improperly and fraudulently bundled into charges reflected on lines 1102 and/or 1103 of the HUD-1 form so as to facilitate illegally charging the fees to the United States military veteran-borrower.

---

[2] The charge could lawfully be listed on line 1101 or 1107 of the HUD-1 form <u>in the lender's column</u> (meaning the lender pays the charge).

22.     The illegal and unauthorized fees are impermissibly included in the principal loan amount financed by the borrower in violation of applicable federal law.

23.     The lender is further required by federal regulation to certify in writing that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

24.     Additionally, Morris Hardwick certified in writing that "the HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction."

25.     Wells Fargo and Morris Hardwick executed the required certifications with respect to Plaintiff's IRRRL.

26.     The certifications made by Defendants with respect to Plaintiff's IRRRL were false and were transmitted through the U. S. mails and by wire.

27.     The federal government relied upon the representations made in the certifications.  Without the certifications, the Department of Veterans Affairs would not have issued a guarantee for Plaintiff's IRRRL.

28.     Plaintiff relied upon the representations made in the loan closing documents, including the representation that the lender had not imposed any

charges or fees against the veteran borrower in excess of those permissible under federal law.

29.    The point of the HUD-1 Settlement Statement and required certifications is for the parties to rely on the representations made therein, and the parties' preparation of and execution of the document along with on-going mortgage payments in the amounts listed reflect that reasonable and on-going reliance.

30.    Plaintiff was harmed because she was illegally required to pay for fees that federal law specifically prohibits lenders, like Wells Fargo, from charging borrowers, like Plaintiff.

## III.    CLAIMS MADE

### A.    Count I:  Liability For Violation Of Georgia's RICO Act

31.    This is an action asserting civil Georgia-RICO claims, pursuant to O.C.G.A. § 16-14-1, *et seq*., on behalf of Plaintiff, individually and on behalf of a class of persons who refinanced their mortgages through a VA IRRRL.

32.    Defendants, through a pattern of racketeering activity or proceeds derived therefrom, maintained both an interest in and control of an enterprise and money in violation of O.C.G.A. § 16-14-4(a).

33.     Defendants were associated with an enterprise and conducted and participated in the enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(b).

34.     Defendants conspired to violate both O.C.G.A. § 16-14-4(a) and (b).

35.     The predicate acts that make up the pattern of racketeering activity include the following:

(a)     violation of O.C.G.A. § 16-8-102(1), (2), (3), and (4); residential mortgage fraud;

(b)     violation of 18 U.S.C. § 1341; mail fraud in connection with multiple and continuous use of the U.S. mail in furtherance of the fraudulent scheme, including the sending of the federally-required certification, HUD-1 form, closing documents, and other loan-related documents by and between the lender Wells Fargo, the underwriter, Morris Hardwick, the loan broker, the title company, and the Department of Veterans Affairs; and

(c)     violation of 18 U.S.C. § 1343; wire fraud in connection with multiple and continuous use of the U.S. wires in furtherance of the fraudulent scheme, including the sending of the federally-required certification, HUD-1 form, closing documents, and other loan-related documents by

and between the lender Wells Fargo, the underwriter, Morris

Hardwick, the loan broker, the title company, and the Department of

Veterans Affairs.

36.    Defendants committed at least two of the predicate acts listed in the

preceding paragraph in furtherance of closing Plaintiff's VA IRRRL.

37.    On information and belief, Defendants have committed more than

forty and perhaps thousands of the predicate acts listed in paragraph 35 in

furtherance of the scheme to charge U.S. military veteran-borrowers illegal charges

in connection with VA IRRRLs.  These predicate acts involve the same or similar

intent, results, accomplices, victims, and methods of commission and are not

isolated incidents.

38.    The enterprise is composed of Wells Fargo, Morris Hardwick, the

underwriters, the independent brokers, title companies, and other closing attorneys,

as well as the law firms that employ the closing attorneys.

39.    The members of the enterprise all share, separate and apart from their

mainstream businesses, the common goal of increasing their own revenues and

profit as a proximate result of Wells Fargo charging and collecting illegal and

unauthorized fees in connection with VA IRRRLs.

40.    The independent brokers are not employees of Wells Fargo or agents of Wells Fargo for the purposes of, and under the law applicable to, the RICO claims asserted in this case.  Morris Hardwick and other closing attorneys are not employees of Wells Fargo, and the law firms that employ the closing attorneys are not employees or agents of Wells Fargo.  The underwriters are typically, but not necessarily always, employees of Wells Fargo.

41.    The fact that the illegal and unauthorized fees are improperly moved to, and disguised within, another category of permissible charges evidences and demonstrates that Wells Fargo and Morris Hardwick know of their existence and illegality.

42.    Wells Fargo makes loans from California and closes the loans, transmits loan documentation, and makes the required federal certifications from and to Georgia and other states using U.S. mails and wires.

43.    Morris Hardwick closes loans in Georgia and multiple other states and transmits the loan documentation to Wells Fargo using U.S. mails and wires.

44.    The underwriters obtain information about the borrower by mail, email, telephone, or facsimile, and the loan documents are sent to Morris Hardwick via U. S. mail, by email, facsimile, or other interstate mail or wire transmission.

11

45.    The closing funds, including the illegal and unauthorized charges, are paid by the borrowers by check or other funds ultimately transferred to Wells Fargo via the U. S. mail or by electronic funds transfers or other similar methods.

46.    Federally required certifications and other documents utilized in the process are transmitted to the federal government via the U. S. mail or by other interstate mail or wire transmission.

47.    Wells Fargo and Morris Hardwick conducted and participated in the enterprise through an on-going, open-ended pattern of racketeering activity.  The predicate acts for this pattern are regular, systematic, and continuous uses by Wells Fargo and Morris Hardwick of the United States Postal Service, the wires, and email to transmit documents which are significant components of the scheme by Wells Fargo and Morris Hardwick to defraud United States military veteran-borrowers who are led to believe that they are being charged only lawful and authorized charges when, in fact, they are being charged illegal and unauthorized charges.  Such use of the mail and wires violates 18 U.S.C. § 1341 (mail) and 18 U.S.C. § 1343 (wire).

48.    Each use by Wells Fargo and Morris Hardwick of the mail to send a federally required certification to the Department of Veterans Affairs and each use of the mail, wires, or email by Wells Fargo and/or Morris Hardwick to send loan

related documents and information, as well as illegal and unauthorized payments, violates 18 U.S.C. § 1341 and/or § 1343 because Wells Fargo and Morris Hardwick knowingly participated in the scheme to fraudulently charge United States military veteran-borrowers illegal and unauthorized charges, and used those mailings to further their interests in that scheme.

49.    Thus, Wells Fargo and Morris Hardwick committed multiple acts of mail and wire fraud, reasonably estimated to be in the thousands, based on the number of VA IRRRLs made by Wells Fargo and/or closed by Morris Hardwick and the number of uses of the mail and wires for each transaction.

50.    Plaintiff believes that there have been thousands of victims of the scheme.  Plaintiff also believes that Wells Fargo and Morris Hardwick continue in their scheme at the present and that, in all probability, they will continue to do so.

51.    The Lender's Certificates required by 38 C.F.R. § 36.4312(a), HUD Form 92900-A (VA Form 26-1802a), are a significant part of the scheme to defraud United States military veteran-borrowers in that the certification amounts to a written and false representation to the Department of Veterans Affairs that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

52.    In the absence of this representation, the Government would not have issued the guarantee for Plaintiff's loan nor for the loans of the class members.

53.    The certification is transmitted to the Government by mail and/or wire in connection with every VA IRRRL made by Wells Fargo and/or closed by Morris Hardwick, including Plaintiff's loan and the loans of the class members.

54.    The HUD-1 forms are a significant part of the scheme to defraud in that the form itemizes, line by line, the charges paid by the parties to the IRRRL, and it falsely represents and states that the United States military veteran-borrower is not paying certain fees, such as attorney fees, that are required to be paid by the lender when, in fact, the veteran borrower is being charged for those fees.

55.    In the absence of this false representation (if, for instance, the attorney fee charge is truthfully disclosed on the form), the Government would not issue the guarantee for the loan or the United States military veteran-borrower would not be charged the illegal and unauthorized fee.

56.    The HUD-1 is transmitted to the Government and by and between Wells Fargo and Morris Hardwick by mail and/or wire in connection with every VA IRRRL made by Wells Fargo and/or closed by Morris Hardwick, including Plaintiff's loan and the loans of the class members.

57.    Plaintiff and the class members are victims of a continuing, wide-spread scheme to defraud thousands of United States military veteran-borrowers into paying certain fees, such as attorney fees, in connection with VA IRRRLs when the fees are legally the responsibility of the lenders, such as Wells Fargo.

58.    The normally-applicable five-year statute of limitations is tolled for the class members because of Wells Fargo's and Morris Hardwick's fraudulent concealment of the scheme, as reflected by the fact that Defendants disguised the illegal and unauthorized charges so as to mislead both the United States military veteran-borrowers and also the Government, which would not have guaranteed the loans but for the concealment.

59.    Plaintiff reasonably relied on the express representation that the charges reflected on the applicable HUD-1 were as represented and lawful.  As a result of such reliance, Plaintiff has suffered actual damages and has been injured as a direct result of the enterprise.

60.    The class members reasonably relied on the express representation that the charges reflected on the applicable HUD-1 were as represented and lawful. Evidence of their reliance is their signatures on the HUD-1 forms, as well as their continued payments of the sums set forth therein.  As a result of such reliance,

class members suffered actual damages and have been injured as a direct result of the enterprise.

**B.    Count II:  Liability For Punitive Damages (Georgia RICO)**

61.    Wells Fargo and Morris Hardwick acted fraudulently and with the intent to deceive Plaintiff, the class members, and the United States Department of Veterans Affairs, as well as many other borrowers.  The misconduct was willful and wanton, fraudulent, intentional, and undertaken with conscious indifference to the likely consequences as defined under O.C.G.A. §51-12-5.1(b).  Such conduct warrants the imposition of punitive damages.

62.    Wells Fargo and Morris Hardwick acted with specific intent to cause harm as defined under O.C.G.A. § 51-12-5.1(f).

**C.    Count III:  Liability For Violation Of The Federal RICO Act**

63.    Defendants violated 18 U.S.C. § 1961(c) by conducting or participating in the conduct of an enterprise through a pattern of racketeering activity, and in all reasonable probability will continue to do so.  Plaintiff and the Class have been injured by reason of Defendants' conduct described in this Complaint.  Plaintiff asserts this Count under 18 U.S.C. § 1964 on behalf of herself and on behalf of a class of all persons similarly situated and asserts all rights and seeks all remedies provided by 18 U.S.C. § 1964.

64.    The RICO enterprise relating to which Plaintiff asserts this Count is the association of Wells Fargo, Morris Hardwick (as well as other closing law firms and lawyers), the loan underwriters, title companies, and independent brokers.  Through control of and participation in this enterprise, Wells Fargo and Morris Hardwick carry out the scheme to charge United States military veteran-borrowers illegal and unauthorized charges for certain fees that are required by federal law to be borne by Wells Fargo in connection with VA IRRRLs.  The members of the enterprise have a common interest in their enterprise:  receiving revenue and profit either directly or indirectly as a proximate result of the illegal and unauthorized charges at the expense of the United States military veteran-borrowers.

65.    The independent brokers are not employees of Wells Fargo or agents of Wells Fargo for the purposes of, and under the law applicable to, the claims in this case.  Morris Hardwick and other closing attorneys are not employees of Wells Fargo, and the law firms that employ the closing attorneys are not employees or agents of Wells Fargo.  The underwriters are typically, but not necessarily always, employees of Wells Fargo.

66.    Wells Fargo and Morris Hardwick use interstate commerce to further the enterprise.

67.     Wells Fargo makes loans from California and closes the loans, transmits loan documentation, and makes the required federal certifications to and from Georgia and other states.

68.     Morris Hardwick closes loans in Georgia and multiple other states and transmits the loan documentation to Wells Fargo in California.

69.     The underwriters obtain information about the borrower by mail, email, telephone, or facsimile, and the loan documents are sent to Morris Hardwick via United States mail, by email, facsimile, or other interstate mail or wire transmission.

70.     The closing funds, including the illegal and unauthorized charges, are paid by the borrowers by check or other funds ultimately transferred to Wells Fargo via the United States mail or by electronic funds transfers or other similar methods.

71.     Federally required certifications and other documents utilized in the process are transmitted to the federal government via the United States mail or by other interstate mail or wire transmission.

72.     Wells Fargo and Morris Hardwick conducted and participated in the enterprise through an on-going, open-ended pattern of racketeering activity.  The predicate acts for this pattern are regular, systematic, and continuous uses by Wells

Fargo and Morris Hardwick of the United States Postal Service, the wires, and email to transmit documents which are significant components of the scheme by Wells Fargo and Morris Hardwick to defraud United States military veteran-borrowers who are led to believe that they are being charged only lawful and authorized charges when, in fact, they are being charged illegal and unauthorized charges.  That use of the mail and wires violates 18 U.S.C. §§ 1341 and 1343, the federal mail and wire fraud statute.

73.    Each use by Wells Fargo and Morris Hardwick of the mail to send a federally required certification to the Department of Veterans Affairs and each use of the mail, wires, or email by Wells Fargo and/or Morris Hardwick to send loan related documents and information, as well as illegal and unauthorized payments, violates 18 U.S.C. §§ 1341 and/or 1343 because Wells Fargo and Morris Hardwick knowingly participated in the scheme to fraudulently charge United States military veteran-borrowers illegal and unauthorized charges, and used those mailings to further their interests in that scheme.

74.    Thus, during the Class Period, Wells Fargo and Morris Hardwick committed multiple acts of mail and wire fraud, reasonably estimated to be in the thousands, based on the number of VA IRRRLs made by Wells Fargo and/or

closed by Morris Hardwick and the number of uses of the mail and wires for each transaction.

75.     Plaintiff believes that there have been thousands of victims of the scheme during the Class Period.  Plaintiff also believes that Wells Fargo and Morris Hardwick continue in their scheme at the present and that, in all probability, they will continue to do so.

76.     The Lender's Certificates required by 38 C.F.R. § 36.4312(a), VA Form 26-1802a (HUD Form 92900-A), are a significant part of the scheme to defraud United States military veteran-borrowers in that the certification amounts to a written and false representation to the Department of Veterans Affairs that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

77.     In the absence of this representation, the Government would not have issued the guarantee for the loan.

78.     The certification is transmitted to the Government by mail and/or wire in connection with every VA IRRRL made by Wells Fargo and/or closed by Morris Hardwick, including Plaintiff's loan and the loans of the class members.

79.    The HUD-1 forms are a significant part of the scheme to defraud in that the form itemizes, line by line, the charges paid by the parties to the IRRRL, and it falsely represents and states that the United States military veteran-borrower is not paying certain fees, such as attorney fees, that are required to be paid by the lender when, in fact, the veteran borrower is being charged for those fees.

80.    In the absence of this false representation (if, for instance, the attorney fee charge were identified honestly on the form), the Government would not issue the guarantee for the loan or the United States military veteran-borrower would not be charged the illegal and unauthorized fee.

81.    The HUD-1 is transmitted to the Government and by and between Wells Fargo and Morris Hardwick by mail and/or wire in connection with every VA IRRRL made by Wells Fargo and/or closed by Morris Hardwick, including Plaintiff's loan and the loans of the class members.

**D.    Count IV:  Federal RICO Conspiracy In Violation Of 18 U.S.C. § 1962(d)**

82.    Defendants also violated 18 U.S.C. § 1962(d) because they knowingly joined in the conspiracy to participate in the RICO enterprise and participated in the conduct of the enterprise by the regular, systematic, and continuous use of the United States mail and wires to commit the predicate offenses of mail and wire fraud.  Plaintiff and the Class have been injured by reason of the conspiracy, and

the conspiracy is the direct and proximate cause of Plaintiff's injuries and the injuries suffered by the Class.

## IV.    CLASS ACTION ALLEGATIONS

83.    Plaintiff, as did thousands of other United States military veteran-borrowers across the United States, refinanced her home mortgage loan and was charged illegal and unauthorized charges for fees, such as attorney fees, that federal law required Wells Fargo to pay.

84.    As was the case with respect to thousands of other VA IRRRLs, Wells Fargo and Morris Hardwick misrepresented to the Government that no illegal and unauthorized charges had been made and fraudulently concealed the illegal and unauthorized charges both from the Government and the United States military veteran-borrowers.

85.    Plaintiff, as did thousands of other United States military veteran-borrowers, received the misrepresentation about the fees she was being charged. And as with thousands of other United States military veteran-borrowers in effectively identical transactions, the representations were false.

86.    Plaintiff and the class are victims of a continuing, wide-spread scheme to deceive thousands of United States military veteran-borrowers into paying

certain fees, such as attorney fees, in connection with VA IRRRLs when the fees were legally the responsibility of the lenders, such as Wells Fargo.

**A.    Class Definition:  The Identity Of The Class Members Can Be Readily Determined.**

87.    In accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and on behalf of a class of all others similarly situated ("Class").

88.    With respect to Counts I and II, Plaintiff seeks certification of the following Rule 23(b)(3) sub-classes, defined as follows:

(a)    All Georgia citizens who received an IRRRL from Wells Fargo who were charged fees not authorized by 38 C.F.R. § 36.4312 through a charge entered on either line 1102 and/or 1103 of the applicable HUD-1 form; and

(b)    All Georgia citizens whose IRRRL was closed by Morris Hardwick who were charged fees not authorized by 38 C.F.R. § 36.4312 through a charge entered on either line 1102 and/or 1103 of the applicable HUD-1 form.

The precise identity of the class members is readily ascertainable using upon common, manageable proof including HUD-1 Forms maintained by Wells Fargo

and Morris Hardwick for IRRRL borrowers.  Accordingly, there will be no need for a trier of fact to consider evidence on any individual claim.

89.    With respect to Counts III and IV, Plaintiff seeks certification of the following Rule 23(b)(3) sub-classes, defined as follows:

(a)    All persons who received an IRRRL from Wells Fargo who were charged fees not authorized by 38 C.F.R. § 36.4312 through a charge entered on either line 1102 and/or 1103 of the applicable HUD-1 Form; and

(b)    All persons whose IRRRL was closed by Morris Hardwick who were charged fees not authorized by 38 C.F.R. § 36.4312 through a charge entered on either line 1102 and/or 1103 of the applicable HUD-1 Form.

The precise identity of class members is readily ascertainable using common, manageable proof including HUD-1 Forms maintained by Wells Fargo and Morris Hardwick for IRRRL borrowers.  Accordingly, there will be no need for a trier of fact to consider evidence on any individual claim.

90.    With respect to the sub-classes as to Wells Fargo set forth above in section (a) of paragraphs 88 and 89, the Class Period extends from the date this Complaint is filed back through and inclusive of the first time Wells Fargo charged

24

a Class Member for those fees set forth in the class definition, such as attorney fees, in violation of applicable federal regulations.  The normally-applicable four-year statute of limitations is tolled because of Wells Fargo's fraudulent concealment of the scheme, as reflected by the fact that Defendants disguised the illegal and unauthorized charges so as to mislead both the United States military veteran-borrowers and also the Government, which would not have guaranteed the loans but for the concealment.

91.    With respect to the sub-classes as to Morris Hardwick set forth above in section (b) of paragraphs 88 and 89, the Class Period extends from the date this Complaint is filed back through and inclusive of the first time Morris Hardwick closed an IRRRL in which the Class Member was charged for those fees set forth in the class definition, such as attorney fees, in violation of applicable federal regulations.  The normally-applicable four-year statute of limitations is tolled because of Morris Hardwick's fraudulent concealment of the scheme, as reflected by the fact that Defendants disguised the illegal and unauthorized charges so as to mislead both the United States military veteran-borrowers and also the Government, which would not have guaranteed the loans but for the concealment.

92.    Plaintiff and the other members of the Class have reasonably relied on the express representation that the charges reflected on the applicable HUD-1 were

as represented and lawful.  As a result of such reliance, they have suffered actual damages and have been injured for the purposes of 18 U.S.C. § 1964 as a direct result of the enterprise.  Their actual damages are believed to average between $350 and $600 per loan, which is the difference between ordinary and reasonable "abstract or title search" and "title examination" fees and those fees charged to the borrowers by inclusion of illegal and unauthorized fees, plus interest Plaintiff and the class members were charged because the illegal fees were included in the loans.

**B.    The Class Satisfies The Numerosity Requirement.**

93.    The Class is so numerous that joinder of all members is impracticable. The exact number and identities of class members are unknown at this time and can be ascertained through appropriate discovery.  Plaintiff's counsel believe the number of class members to be in the thousands.

**C.    Questions Of Law And Fact Common To The Class Exist.**

94.    Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only individual members of the class.  Said common questions include, but are not limited to, the following:

(a)    Whether charges for settlement closing attorney fees should be disclosed on line 1101 or 1107 of the HUD-1 form;

(b)    Whether it is permissible, in connection with a VA IRRRL, to group charges for settlement closing attorney fees with "title exam" fees and disclose them on line 1103 of the HUD-1 form;

(c)    What is an appropriate and reasonable charge, in connection with a VA IRRRL, for "title exam" fees;

(d)    Whether it is lawful to disclose on the HUD-1 form fees that are not authorized to be charged to the borrower in connection with a VA IRRRL in such a way as to facilitate charging the borrower for those fees;

(e)    Whether Defendants engaged in mail and/or wire fraud by transmitting settlement documents with mis-identified charges through the U.S. mail and wires, for the purpose of obtaining money from veteran-borrowers;

(f)    Whether Defendants violated the law by certifying that no charges had been made in violation of VA regulations;

(g)     Whether Defendants engaged in mail and/or wire fraud by
transmitting false certifications through the U.S. mail and wires, for
the purpose of obtaining money from veteran-borrowers;

(h)     Whether Defendants violated O.C.G.A. § 16-8-102(1), (2), (3), and
(4), relating to residential mortgage fraud;

(i)     Whether the VA would have guaranteed class member IRRRL loans
had all charges been disclosed on the correct line(s) of the HUD-1
forms; and

(j)     Whether Defendants conspired to commit the acts set forth herein.

**D.    Plaintiff's Claims Are Typical.**

95.     The claims of or defenses against Plaintiff, as a representative party,
are typical of the claims of or defenses against the Class, in that all such claims
arise out of the actions of Wells Fargo and Morris Hardwick charging unauthorized
fees to borrowers in connection with IRRRLs.  Plaintiff and other class members
have suffered a common injury arising out of Defendants' common course of
conduct as alleged herein.  The provisions of the HUD-1 forms are the same or
substantially the same for each class member, as such provisions are in accordance
with the applicable federal law addressing IRRRLs.

**E.    Plaintiff And Her Counsel Will Adequately Represent The Class.**

96.    Plaintiff, as the representative party for the Class, will fairly and adequately protect the interests of the members of the Class and has no interest antagonistic to or in conflict with those of class members.

97.    Plaintiff has retained class counsel competent to prosecute class actions, including consumer class actions, and she intends to prosecute this action vigorously for the benefit of the class.

**F.    Common Questions Of Law Or Fact Predominate Over Individual Issues.**

98.    The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members.  The overarching issue of whether the class members were improperly charged for certain fees, such as attorney fees, is the same for every potential class member. The precise identities of the class members and the amount of money improperly charged to any particular class member is determinable using objective criteria and common, manageable proof including the HUD-1 Forms maintained by Wells Fargo and Morris Hardwick for IRRRL borrowers.

**G.    A Class Action Is Superior To Other Methods Of Resolution.**

99.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since joinder of all members of the class is impractical.

100.    As any injury suffered by each class member is relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to obtain relief.  In addition, many, if not the overwhelming majority, of the members of the proposed class are unaware that they have been improperly charged fees in connection with IRRRLs.  The interest of members of the Class in individually controlling the prosecution or defense of separate actions is not great given the small amount in controversy in individual cases and the difficulty of detection of the enterprise and proof of it.

101.    It is desirable to concentrate this litigation in one forum as opposed to having individual actions.  The interests of judicial economy favor adjudicating the claims as a class.

102.    There are no known difficulties likely to be encountered in the management of a class action.

## V.    DAMAGES CLAIMED

### A.    Compensatory And RICO Damages Sought

103.   Plaintiff seeks, on behalf of herself and the class, to recover all damages caused by the fraudulent scheme, including interest.

104.   Plaintiff claims, on behalf of herself and the class, special damages, including the amount of fees charged to her and them that federal law required be borne by the lender, Wells Fargo.

105.   Plaintiff claims, on behalf of herself and the class, special damages, including interest she and they have paid on the loan principal attributable to the fee that should have been borne by the lender.

106.   The action also seeks applicable RICO penalties, including treble damages, punitive damages, attorney fees, and reasonable costs of investigation and litigation, pursuant to O.C.G.A. § 16-14-6(c), as to Counts I and II.

**B.    Uncapped Punitive Damages (Counts I and II)**

107.   Plaintiff seeks, on behalf of herself and the class, uncapped punitive damages, pursuant to O.C.G.A. § 51-12-5.1(f), because Defendants acted with specific intent to cause harm.  Plaintiff seeks punitive damages in an amount to be determined by the enlightened conscience of a fair and impartial jury.

WHEREFORE, Plaintiff prays for the following relief:

(a)    That summons issue and service be perfected upon Defendants requiring them to appear before this Court and answer this Complaint;

(b)     That a class be certified as sought in this Complaint;

(c)     That Plaintiff and the class have a trial by jury;

(d)     That Plaintiff and the class recover all elements of compensatory

damages and all such damages recoverable under Georgia law against

Defendants as specified in this complaint;

(e)     That Plaintiff and the class recover uncapped punitive damages

against Defendants to punish them for their misconduct and to deter

them from future misconduct; and

(f)     That Plaintiff and the class have such other and further relief as this

Court deems just and proper.

This 6th day of February, 2009.

Respectfully submitted,

DAUGHTERY, CRAWFORD,
FULLER & BROWN, LLP

BY: /s/ Jason L. Crawford

1430 Wynnton Road                    JASON L. CRAWFORD
Columbus, Georgia  31906             Georgia Bar No. 193752
Post Office Box 1118                 jason@dcfblaw.com
Columbus, Georgia 31902              J. CLAY FULLER
Telephone: (706) 320-9646            Georgia Bar No. 280207
Facsimile: (706) 494-0221            clay@dcfblaw.com
                                     DUSTIN BROWN
                                     Georgia Bar No. 086998
                                     dustin@dcfblaw.com

## **CERTIFICATE OF SERVICE**

This is to certify that on February 6, 2009, I electronically filed the within and foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Mr. Edmund J. Novotny
Mr. Dylan W. Howard
Baker, Donelson, Bearman,
  Caldwell & Berkowitz, P.C.
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, GA  30326

Frederick G. Boynton
Morris Hardwick Schneider, LLC
1867 Independence Square
Suite 105
Atlanta, GA  30338

DAUGHTERY, CRAWFORD,
FULLER & BROWN, LLP

By: /s/ Jason L. Crawford

1430 Wynnton Road                    Jason L. Crawford
Post Office Box 1118                 Georgia Bar No. 193752
Columbus, Georgia 31902              jason@dcfblaw.com
(706) 320-9646 phone                 J. Clay Fuller
(706) 494-0221 facsimile             Georgia Bar No. 280207
                                     clay@dcfblaw.com
                                     Dustin T. Brown
                                     Georgia Bar No. 086998
                                     dustin@dcfblaw.com